FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG 3 1 2022

KEVIN P. WEIMER, Clerk
By: *Kimberly Hicks* Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DONALD REMY<br><br>Plaintiff,<br><br>v.<br><br>CHILDREN'S HEALTHCARE OF ATLANTA,<br><br>Defendants. | CIVIL ACTION FILE NO.<br><br>1:22-CV-3545<br><br>**JURY TRIAL DEMANDED** |

## I. COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1. COMES NOW, Plaintiff DONALD REMY (hereinafter referred to as "Plaintiff" or "Remy") and files their Complaint for Damages and Equitable relief against Defendant Children's Healthcare of Atlanta ("Children's" or "Defendant"), as a result of the following acts and occurrences

## II. NATURE OF THE COMPLAINT

2. Discrimination against Plaintiff because of race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981a

3. Race Discrimination claiming disparate treatment discrimination violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981

4. Wrongful Termination against Plaintiff because of race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981a

5. Defendants' conduct inflicted Intentional Infliction of Emotional Distress which was willful, intentional, and outrageous.

## III. THE PARTIES

6. Plaintiff DONALD REMY worked for the Defendant and was subject to their direction and control. He is African American. Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

7. Defendant CHILDREN'S HEALTHCARE OF ATLANTA does business in Atlanta, Georgia and has more than 15 employees.

8. Defendant is a domestic limited liability company qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District

9. At all times relevant to alleged in this complaint, CHILDREN'S HEALTHCARE OF ATLANTA have continuously been engaged in industry affecting commerce within the meaning of 42 U.S.C §200e(b), (g), and (h).

10. At all times relevant to the events alleged in this complaint, the acts taken by Defendants' agents, officers, and employees described in this complaint were performed within the course and scope of their employment and on behalf of CHILDREN'S HEALTHCARE OF ATLANTA.

11. Defendant Children's may be served with process by delivering a copy of the summons and complaint to its registered agent, CSC of Cobb County, Inc., 192 Anderson Street SE, Suite 125, Marietta GA, 30060 (Cobb County).

### IV. JURISDICTION AND VENUE

12. The unlawful employment practices alleged in this Complaint were committed within this district.

13. Jurisdiction over Plaintiff's federal claims is conferred upon this court pursuant to 28 U.S.C. § 1331 and 1343(a)(4) and 28 U.S.C. § 2202.

14. Jurisdiction over Plaintiff s Georgia state law claims is invoked pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

15. Venue is proper in this court under 28 U.S.C. § 1391 and 42 U.S.C. § 2000(e)-5(f) because the unlawful practices and violations of the Plaintiff's rights alleged were committed in this judicial district.

16. Plaintiff timely filed a charge of discrimination at the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC has issued notice of right to sue, and all conditions precedent to initiate this lawsuit have been timely fulfilled.

### V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

17. Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC). On or around June 1st, 2022, the EEOC issued Plaintiffs Notices of Right to Sue.

18. Plaintiff have timely filed this action and have complied with all

administrative prerequisites to bring this lawsuit.

## VI. FACTUAL ALLEGATIONS

19. Plaintiff was first employed by the Defendant in March 2019 as a contractor then eventually hired full-time as a full-time employee in October 2019.

20. At all times material to this action, the Plaintiff was employed by the Defendant as a Solution Center Tech inside of the Defendants' Duluth, GA office.

21. During the duration of the Plaintiff's employment with the Defendant, the Plaintiff was employed along with two Caucasian employees, Matthew Semple and Joseph Dang. Using the McDonnell Douglas burden shifting framework:

    a. Both Caucasian employees were "similarly situated comparators" outside of the Plaintiff's protected class.

    b. All three held the same title "Solution Center Tech", all three were assigned the same work duties, all three had the same three Solution Center seniors [Marcus Craft, Roland Lee, and Godwin Maduro], supervisor [Rachel Jackson], and manager [John Baker], all three worked in the same department IS&T, all three worked for the Defendant at the Defendants' Duluth, GA office which was called the Solution Center.

22. Although the Plaintiff initially worked as a contractor for the Defendant then was promoted to a full-time position with the Defendant, the Plaintiff cites Gray v. Deloitte LLP & Deloitte & Touche LLP, CIVIL ACTION FILE NO. 1:17-cv-04731-CAP-AJB, to demonstrate the courts precedent of recognizing employment relationship where two companies are treated as a single employer therefore the Plaintiff along with the two Caucasian employees, Mr. Semple and Mr. Dang are "similarly situated comparators" under the McDonnell Douglas burden shifting framework.

a.  The Eleventh Circuit has directed that the term "employer" be interpreted liberally. See Lyes v. City of Riviera, Fla., 166 F.3d 1332, 1341 (11th Cir. 1999) (en banc). Furthermore, in the employment context, the Eleventh Circuit [*10] has identified three situations where it is appropriate to aggregate different entities and treat them as a single employer for the purposes of Title VII: (1) the single employer—where the two entities are highly integrated with respect to ownership and operations; (2) joint employers—where the two entities contract with each other and one entity has sufficient control over the terms and conditions of the other's employees; and (3) the agency test—where an employer delegates control over its employees to a third party. Id. In determining whether two nongovernmental entities should be consolidated and counted as a single employer, courts apply four criteria for determining whether nominally separate entities should be treated as an integrated enterprise: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."

23. During the Plaintiff's employment with the Defendant, the Plaintiff successfully completed the Defendants introductory probationary period, the Plaintiff never was placed on a performance improvement plan, the Plaintiff was never written up, the Plaintiff never had any attendance issues, the Plaintiff was never given a performance review, nor was the Plaintiff ever put through the Defendants progressive discipline policy.

24. In order for the Plaintiff to secure a full-time employment with the

Defendant, the Plaintiff had to obtain an industry recognized IT certification, the CompTIA A+ certification. The Plaintiff obtained the CompTIA A+ certification in June 2019.

25.     In addition, during the Plaintiff's course of employment the Plaintiff continuously had better employment metrics than Mr. Semple and Mr. Dang.

26.     After the Plaintiff became a full-time employee in Oct. 2019 with the Defendant, the Defendant instituted a new policy in Nov. 2019 where it required all of their Solution Center employees and contractors to obtain and/or recertify their CompTIA A+ certification or face termination.

27.     Prior to the Plaintiff becoming onboarded with the Defendant as a full-time employee, Mr. Baker held a grudge against the Plaintiff for accidentally attributing a workplace policy to Mr. Baker and not providing disparaging remarks about Mr. Maduro during their one-on-one meetings. This grudge that Mr. Baker held against the Plaintiff almost prevented the Plaintiff from becoming a full-time employee with the Defendant.

28.     In the year of 2020, when the entire world suffered with the worldwide COVID-19 pandemic, Mr. Baker and the Defendant deliberately chose to terminate the Plaintiffs employment on June 19th, 2020 (Juneteenth 2020) under the false pretense and guise of reduction in force due to the COVID pandemic.

29.     The Plaintiff cites from Boston v. Kroger Co., CIVIL ACTION NO. 1:19-CV-0810-JPB-JSA to prove and demonstrate a "convincing mosaic" of circumstantial evidence from which a factfinder can infer discriminatory motivation:

        a.     Lewis v. City of Union City ("Lewis II"), 934 F.3d at 1185, (11th Cir. 2019) … a plaintiff will survive summary judgment if he can present a convincing mosaic of circumstantial

>evidence from which a factfinder can infer discriminatory motivation.... This can "be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent may be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." Id. (quoting Silverman v. Bd. of Educ. of City of Chi., 637 F.3d 729, 733-34 (7th Cir. 2011)). While the "convincing mosaic" method bears similarities to the McDonnell Douglas method, it operates as a totality-of-circumstances test rather than a rigid step-by-step analysis.

30. Prior to the termination of the Plaintiff, Mr. Semple did not have the job required CompTIA A+ certification in order to maintain his employment.

31. Following the Plaintiff termination, the Plaintiff filed a complaint with the EEOC on August 20th, 2020.

32. During the course of the EEOC investigation, the Defendant falsely stated in their position statement that the Plaintiff had performance issues and did not have enough tenure but did not substantiate any of their claims when requested by EEOC. However, the Plaintiff was informed during their termination meeting that tenure was never a factor and was never told why and how the Plaintiff was selected for termination.

33. On June 1st, 2022, the EEOC closed their investigation and issued the Plaintiff a NOTICE OF YOUR RIGHT TO SUE which stated:

    a.    The EEOC will not proceed further with its investigation and makes no determination about whether further investigation

would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

34. Although Defendant purports to provide a legitimate nondiscriminatory reason for the adverse action, this reason is a pre-text.

## VII.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### COUNT I: DISCRIMINATION

Discrimination against Plaintiff because of race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981a

35. Plaintiffs re-alleges the preceding paragraphs as is set forth fully herein.

36. Defendants' concerted actions directed toward Plaintiff were substantially motivated by their race, were discriminatory in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981a.

37. These violations had an adverse effect on Plaintiffs benefits, privileges, terms and conditions of employment and caused Plaintiff to suffer damages.

38. Plaintiff is eligible to recover equitable and legal relief as set forth below as a direct and proximate consequence of Defendants' violations of their rights guaranteed by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981a.

### SECOND CLAIM FOR RELIEF
### COUNT II: RACE BASED DISPARATE-TREATMENT DISCRIMINATION

Race Discrimination claiming disparate treatment discrimination violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981

39. Plaintiffs re-alleges the preceding paragraphs as is set forth fully herein.

40. Defendants' concerted actions directed toward Plaintiff were substantially motivated by their race, were discriminatory in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

41. These violations had an adverse effect on Plaintiffs benefits, privileges, terms and conditions of employment and caused Plaintiff to suffer damages.

42. Plaintiff is eligible to recover equitable and legal relief as set forth below as a direct and proximate consequence of Defendants' violations of her rights guaranteed by the Civil Rights Act of 1866, 42 U.S.C. § 1981.

### THIRD CLAIM FOR RELIEF

### COUNT III: WRONGFUL TERMINATION

Wrongful Termination against Plaintiff because of race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981a

43. Plaintiffs re-alleges the preceding paragraphs as is set forth fully herein.

44. Defendants' concerted actions directed toward Plaintiff were substantially motivated by their race, were discriminatory in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981a.

45. These violations had an adverse effect on Plaintiffs benefits, privileges, terms and conditions of employment and caused Plaintiff to suffer damages.

46. Plaintiff is eligible to recover equitable and legal relief as set forth

below as a direct and proximate consequence of Defendants' violations of her rights guaranteed by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981a.

## **FOURTH CLAIM FOR RELIEF**

### **COUNT IV: INTENTIONAL INFLICTIONS OF EMOTIONAL DISTRESS**
Defendants' conduct inflicted Intentional Infliction of Emotional Distress, which was willful, intentional, and outrageous

47. Plaintiffs re-alleges the preceding paragraphs as is set forth fully herein.

48. Defendants intentionally, maliciously, wantonly and in gross and in reckless disregard for Plaintiff s health and safety, engaged in extreme and outrageous conduct when they subjected Plaintiff to discrimination and termination during a worldwide pandemic, thereby causing Plaintiffs to suffer grievous emotional distress, mental anguish, loss of income, humiliation, and other indignities.

49. The actions of Defendants caused Plaintiff to suffer damages.

50. Plaintiff is eligible to recover equitable and legal relief as set forth below as a direct and proximate consequence of Defendants' actions.

### VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

51. That Plaintiff shall be granted judgment against Defendant, as requested, under Claims 1 through 4 as set forth above

52. For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

53. For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

54. For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

55. For punitive damages in an amount to be determined at trial;

56. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

57. For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

58. Any and other such further relief that this Court or the Finder of Fact deems equitable and just.

Dated: August 30, 2022                    Respectfully submitted,

By: _____
DONALD REMY, PRO SE
PO BOX 76260
ATLANTA, GA 30358
TELEPHONE: 850-296-2914
DON.REMY@OUTLOOK.COM

Plaintiff